UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOBY MICKEL,

    Plaintiff,

v.

CITY OF LANSING, et al.,

    Defendants.
_____/

Hon. Hala Y. Jarbou

Case No. 1:23-cv-915

**REPORT AND RECOMMENDATION**

Plaintiff Jakoby Mickel filed his pro se complaint in this action on August 30, 2023. He alleged claims pursuant to 42 U.S.C. § 1983 arising out of a traffic stop that occurred on July 14, 2023, in or around the City of Lansing. Mickel alleged claims of false arrest, illegal detainment, and racial profiling. Following initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2), Mickel's claims against Defendant Officer Clyde Smith—whom Mickel alleged initiated the traffic stop without probable cause—were permitted to proceed. (ECF Nos. 6 and 7.) Mickel's claims against the City of Lansing and the Dewitt Township Police Department were dismissed for failure to state a claim. (*Id.*.)

Presently before me is Defendant Smith's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** Defendant Smith's motion and dismiss Mickel's complaint with prejudice.

I. **Background**

Mickel alleges that he is a citizen of Mississippi, but in July 2023 he was working in Lansing, Michigan, on a construction project. On the evening of July 14, 2023, Mickel and two

of his coworkers left the Sleep Inn Hotel in Mickel's mother's white Nissan Maxima and headed toward downtown Lansing to ride scooters. (ECF No. 1 at PageID.2–3.) Mickel's coworker, Daunte Bonds, was driving because Mickel had lost or misplaced his driver's license. (*Id.* at PageID.3.) Mickel alleges that shortly after they pulled out of the parking lot, Defendant Smith stopped the vehicle. (*Id.* at PageID.2.)

Contrary to Mickel's allegations, Defendant Smith's body camera tells a somewhat different story. The video shows that Defendant Smith did not initiate the traffic stop. Instead, he was dispatched to assist Sgt. Wiswasser of the DeWitt Township Police Department, who had already initiated the stop. When Defendant Smith arrived at the scene, he approached the passenger sitting in the right rear seat of the Maxima while Sgt. Wiswasser spoke to the driver outside the driver's door. After Smith asked the passenger for identification, the passenger identified himself as Mickel. Meanwhile, Bonds had exited the Maxima, and Defendant Smith joined Sgt. Wiswasser as he spoke to Bonds near Sgt. Wiswasser's patrol vehicle regarding the Maxima's missing registration. Sgt. Wiswasser told Bonds that he was attempting to determine whether the vehicle could legally be on the road without the registration.

Defendant Smith remained with Bonds while Sgt. Wiswasser sat in his vehicle and entered information into his computer. Bonds asked Defendant Smith about the license plate light being out on the Maxima, but Smith told him that he was not present when the car was stopped. Eventually, Sgt. Wiswasser returned to the Maxima and spoke with an occupant while Defendant Smith and Bonds continued to stand behind the Maxima and spoke about their jobs and other subjects. A few minutes later, Mickel exited the Maxima and Sgt. Wiswasser placed him in handcuffs. At Sgt. Wiswasser's request, Defendant Smith placed Bonds in Sgt. Wiswasser's patrol vehicle. Sgt. Wiswasser then informed Defendant Smith that Mickel had a

handgun in the Maxima and asked Defendant Smith to place Mickel in the rear of Defendant Smith's patrol vehicle. After placing Mickel in the patrol vehicle, Defendant Smith asked Mickel if the gun belonged to him, and Mickel admitted that it was his and that he had brought with him from Mississippi to Michigan. Defendant Smith opened the window for Mickel and returned to the Maxima with Sgt. Wiswasser.

Defendant Smith then returned to the front of Sgt. Wiswasser's vehicle and stood by while Sgt. Wiswasser questioned the third occupant of the Maxima. After speaking with the occupant, Sgt. Wiswasser completed his search of the Maxima. Sgt. Wiswasser gave Defendant Smith Mickel's cell phone and asked him to put it in Mickel's pocket. Defendant Smith placed the phone in Mickel's pocket and asked Mickel whether the gun was registered to him. Mickel denied that it was registered to him but thought that it was registered to his sister. When Defendant Smith was finished with Mickel, he spoke with another Dewitt Township officer who had arrived on the scene and gave her the information he had about the stop and detention. Sgt. Wiswasser allowed Bonds to exit his patrol vehicle and then moved Mickel from Defendant Smith's vehicle to Sgt. Wiswasser's vehicle. Sgt. Wiswasser then explained to another of Mickel's coworkers who was approaching the scene that the Maxima had to be impounded because it was not registered.

The officers spoke for a minute before Sgt. Wiswasser thanked Defendant Smith for assisting him. Defendant Smith left the scene a few minutes later, and Sgt. Wiswasser transported Mickel to the jail.

## II. Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Supreme Court has held that to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

### III. Discussion

Defendant Smith contends that he is entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S.

635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236, 129 S. Ct. 808.

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also said that when "pleadings in th[e] case are not ambiguous," and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," a court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005). In addition, the Sixth Circuit has held that "when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022).

    **A.**    **Constitutional Violation**

"The Fourth Amendment forbids law enforcement officers from making unreasonable searches and seizures, 'and its protections extend to brief investigatory stops of . . . vehicles that fall short of traditional arrest.'" *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A police officer may initiate a lawful traffic if the officer has "probable cause" to believe that a driver has violated a traffic law. *United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020) (citing *Whren v. United States*,

517 U.S. 806, 810 (1996)). When a traffic violation is "ongoing," the "less demanding 'reasonable suspicion' standard applies." *Id.* (citing *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008)).

In his complaint, Mickel alleges that Defendant Smith violated his Fourth Amendment rights by initiating a traffic stop, continuing to detain him after the stop, and searching the Maxima, all without probable cause. (ECF No. 1 at PageID.2–3.) The video from Defendant Smith's bodycam, as recounted above, clearly shows that Mickel's allegations are unfounded. Defendant Smith did not initiate the traffic stop, search the Maxima, or arrest Mickel. Thus, he could not have violated Mickel's Fourth Amendment rights based on acts he did not perform.

There is no indication from the video that Defendant Smith knew any details concerning the initial stop at the time he arrived. Defendant Smith was thus entitled to rely on the information Sgt. Wiswasser gave him about the initial stop. *See Bey v. Falk*, 946 F.3d 304, 316 (6th Cir. 2019) (noting that the "collective-knowledge" doctrine allows an officer to rely in good faith on information obtained from a fellow officer). Sgt. Wiswasser's focus at the time Defendant Smith arrived was on determining the status of the vehicle's registration. Subsequently, while still investigating the registration, Sgt. Wiswasser discovered the gun in the Maxima, which prolonged the stop. Given this discovery, as well as the unresolved registration issue, there is no indication that the stop was "prolonged beyond the time reasonably required to complete the mission" of the stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal quotation marks and brackets omitted). While Defendant Smith did briefly assist Sgt. Wiswasser in detaining Mickel once the gun was found in the Maxima, the officers had a reasonable suspicion of criminal activity to justify detaining him pending completion of their investigation. *See United States v. Whitley*, 34 F.4th 522, 532 (6th Cir. 2022) (observing that officers must have

some "minimal level of objective justification" to lawfully continue a traffic stop beyond an initial traffic-related investigation).

In his response, Mickel contends that Sgt. Wiswasser told Defendant Smith to throw away the license plate because he was trying to destroy evidence that he lacked probable cause. (EFF No. 17 at PageID.70.) However, the bodycam video plainly refutes this assertion. In short, Mickel cites no persuasive basis for the Court to conclude that Defendant Smith violated his rights and allow him to avoid dismissal of his complaint.

### B.     Clearly Established Law

Mickel also fails to satisfy the second prong of the qualified immunity analysis. At this step, a court considers the state of the law as of the date of the alleged violation. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993. (quoting *White*, 580 U.S. at 79). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). Here, Mickel cites no case that would have given Defendant Smith fair notice at the time of the traffic stop that any of his actions violated Mickel's clearly established rights. Thus, Defendant Smith is entitled to qualified immunity on the second prong as well.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendant Smith's motion to dismiss (ECF No. 12) and dismiss the complaint **with prejudice**. I further note that in his response, Mickel requests an opportunity to amend his complaint to add Sgt. Wiswasser as a defendant, but he has neither filed a motion for leave to amend—the proper vehicle for seeking to amend—nor provided the Court a proposed amended complaint. Accordingly, I recommend that this request be denied.

Dated: March 18, 2024                              /s/ Sally J. Berens
                                                              SALLY J. BERENS
                                                              U.S. Magistrate Judge

## NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).